Stephen Stephon Williams v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-148-CR

STEPHEN STEPHON WILLIAMS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 89
TH
 DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant was convicted by a jury of two counts of aggravated robbery, and the jury, having found the enhancement allegations true, assessed his punishment on each count at sixty-five years’ confinement in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine.  The trial court sentenced him accordingly.  Appellant brings nine issues on appeal, complaining that the evidence is legally and factually insufficient; that the trial court abused its discretion by failing to grant a mistrial when an extraneous offense was improperly admitted before the jury and by allowing a police officer to testify that a complainant had identified Appellant as one of the robbers; and that he had received ineffective assistance of counsel at trial.  Because we hold that the evidence is legally and factually sufficient to support Appellant’s conviction, that the trial court properly admitted the contested evidence, and that Appellant failed to prove his claims of ineffective assistance, we affirm the trial court’s judgment.

Sufficiency of the Evidence

In his first issue, Appellant contends that the evidence is legally insufficient to support his conviction.  In his second issue, he contends that the evidence is factually insufficient to support his conviction.

The evidence shows that the complainants, a married couple in their fifties, had won a large sum of money in Las Vegas about two weeks before the robbery.  On a Tuesday morning in February 2002, the complainants were at home.  The man was asleep.  The woman, expecting her daughter, answered a knock at the door.  Two men came in with a gun.  The shorter one had a gun, and a stocking masked his face.  He threw the woman on the floor, held his knee on her back, and held the gun to her head.  She could feel that he was wearing a sweater.  The taller robber, dressed in a dark shirt and dark pants of some kind, had a toboggan and a handkerchief around his face.  The men demanded money from the woman, and, after her husband woke up, from him.  The robber holding the woman down made her take off her wedding ring.  The other robber took necklaces from her husband.  The robber holding the woman down threatened to kill her.  After the men got the jewelry, they went out the front door and ran down Avenue F towards Monroe.  The female complainant then got up and called 911.  She was bruised on her face and under her arms after the encounter.  On the night before the robbery, Appellant, whom the complainant knew as Dizzy, was at the complainants’ home.

Officer Schulte heard the dispatch regarding the offense at about 11:28 a.m.  The only description he remembers receiving was “two black males wearing dark clothing.”  Within minutes of the robbery, he observed from his unmarked car in the multiethnic neighborhood, somewhere between two and more than a few blocks away from the crime scene, two black males wearing dark clothing—Appellant and a companion.  Schulte saw that Appellant and a companion “were walking very quickly,” staying on the grassy part of the road, and “looking back over their shoulder[s] as if they thought somebody was following them or looking for them.”  Schulte detained Appellant and his companion outside a home.  There was testimony that the crime scene and the scene of arrest were within running or walking distance of each other.  Schulte had Appellant sit on the steps outside the home.  A wedding ring was found on the steps after Appellant stood up.  Another officer saw Appellant drop the ring on to the steps from his left hand. Appellant was wearing a blue sweater.  A search of his person revealed that he was carrying a crack pipe.  The other man, who was wearing a blue, heavier flannel shirt and coveralls, had a gray cap, a blue bandana, a gun, and two necklaces, one of which was missing part of its chain.  After being called by the police, the female complainant arrived at the scene of arrest and identified the ring and necklaces, providing the missing piece of chain from the broken necklace.  At trial, the female complainant could not identify either robber.  The male complainant did not testify.

Based on the applicable standards of review,
(footnote: 2) we hold that the evidence is legally and factually sufficient to support Appellant’s conviction.  We overrule his first two issues.

Evidentiary Rulings

In his third issue, Appellant contends that the trial court abused its discretion in refusing to grant a motion for mistrial after the female complainant testified that Appellant had been at her house on the night before the robbery trying to sell stolen merchandise.  Generally, the admission of improper evidence may be cured by a withdrawal of the evidence and an instruction to disregard.
(footnote: 3)  The effectiveness of curative instructions is determined on a case-by-case basis.
(footnote: 4)  However, we must presume that the jury followed the trial court's instructions, absent any indicia to the contrary.
(footnote: 5)  A mistrial is only required when the impropriety is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury.
(footnote: 6)  We review a trial court's denial of a motion for mistrial under an abuse of discretion standard.
(footnote: 7)
 Appellant’s trial counsel objected after the female complainant testified about the extraneous offense.  In the bench conference immediately following her testimony, Appellant’s trial counsel stated that he had had no notice about the extraneous, unadjudicated offense.  The prosecutor responded that she had not heard the information before, either.  The trial court excused the jury for the remainder of the discussion.

In arguing to the trial court that an instruction to disregard would not cure the harm, Appellant’s trial counsel stated that he understood that the State had not intentionally put on the testimony.  After the trial judge stated that he was not going to grant a mistrial but would issue an instruction to disregard the evidence about the stolen merchandise (but not the evidence concerning Appellant’s presence at the complainants’ home), Appellant’s trial counsel changed his mind and concluded that the State had deliberately elicited the evidence because it knew that identity was the defensive issue.  At that point, the State called its investigator as a witness in the hearing to show that the female complainant had not mentioned anything about the merchandise being stolen when he interviewed her.  Next, Appellant’s trial counsel was allowed to take the complainants on voir dire concerning the evidence of the extraneous offense at issue as well as other matters not pertinent to the motion for mistrial.  The trial court recessed until the next morning.  Trial counsel did not object to the recess or request that the jury be instructed before it was dismissed.  The next morning, the trial court instructed the jury to disregard the female complainant’s last statement without repeating what it was.

Based on our review of the record, we cannot say that the impropriety was clearly calculated to inflame the minds of the jury, nor can we say that it suggests the impossibility of withdrawing the impression produced on the minds of the jury.
(footnote: 8)  Further, we must conclude that the trial court’s instruction sufficiently cured any harm from the improper argument.
(footnote: 9)  We consequently hold that the trial court did not abuse its discretion in denying Appellant’s motion for mistrial.  We overrule his third issue.

In his fourth issue, Appellant contends that the trial court erred in allowing a police officer to testify that the male complainant identified the voice  of one of the robbers as that of Appellant’s.  The officer testified, over Appellant’s hearsay objections, that the male complainant had told the officer that he recognized the voice of one of the robbers and that it sounded like Appellant’s.  The trial court stated that it was not admitting the evidence for the truth of the matter asserted but to show the officer’s motivation for his later actions.  The trial court instructed the jury to consider the evidence only for the limited purpose of showing the officer’s motivation.  We presume that the jury followed the limiting instruction.
(footnote: 10)  Appellant lodged no other objections at trial to this testimony.  We overrule his fourth issue.

Ineffective Assistance of Counsel Claims

In his fifth issue, Appellant contends that he was denied effective assistance of counsel when his trial counsel failed to move to suppress or otherwise object to evidence seized as a result of the unlawful detention of Appellant.  Regarding the evidence seized from his companion, Appellant had no standing to file a motion to suppress or object to its admission.
(footnote: 11)  Regarding the testimony connecting Appellant to the wedding ring and all evidence about the crack pipe, given the evidence as detailed in our sufficiency analysis, we agree with Appellant that the 
Terry
 stop was illegal.
(footnote: 12)  Officer Schulte saw two black men in dark clothing in a multiethnic neighborhood blocks away from the crime scene, walking fast and looking over their shoulders.  That is not enough to generate reasonable suspicion.
(footnote: 13)  Appellant’s trial counsel should have moved to suppress or otherwise objected to the admission of the testimony about the ring and the crack pipe.  Unfortunately, however, the record does not reveal the basis for Appellant’s trial counsel’s decisions not to file a motion to suppress or object to the admission of the evidence.  This court will not “reverse a conviction on ineffective assistance of counsel grounds when counsel's actions or omissions may have been based upon tactical decisions, but the record contains no specific explanation for counsel's decisions.”
(footnote: 14)  Accordingly, based upon the applicable standard of review,
(footnote: 15) we overrule Appellant’s fifth issue.

In his sixth and seventh issues, Appellant complains that he received ineffective assistance at voir dire when trial counsel failed to move for mistrial following a prejudicial comment by a veniremember and when trial counsel failed to strike a juror who knew Appellant from the juror’s work as a jailer.  In his ninth issue, Appellant complains that his trial counsel rendered ineffective assistance by not calling the male complainant to testify.  Again, the trial record is devoid of evidence showing trial counsel’s reasons for these strategic decisions.
(footnote: 16)  Accordingly, based upon the applicable standard of review,
(footnote: 17) we overrule Appellant’s sixth, seventh, and ninth issues.

In his eighth issue, Appellant complains that he was denied effective assistance of counsel when trial counsel failed to object to the admission, in one exhibit, of the co-defendant’s bandana and Appellant’s crack pipe.  Appellant contends that the placing of the two items in one exhibit improperly connected Appellant to the co-defendant who was connected to the robbery through the bandana.  Appellant cites no law to support his theory that the admission of the two items of evidence in one exhibit was not proper.
(footnote: 18)  We therefore overrule this issue.

Conclusion

Having overruled Appellant’s nine issues, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: DAUPHINOT, LIVINGSTON, and HOLMAN, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  October 14, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See Jackson v. Virginia
,
 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); 
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000) (all providing legal sufficiency standard of review);
 Zuniga v. State
, No. 539-02, 2004 WL 840786, at *4, 7, 9 (Tex. Crim. App. Apr. 21, 2004); 
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (all providing factual sufficiency standard of review).

3:
Waldo v. State
, 746 S.W.2d 750, 752 (Tex. Crim. App. 1988).

4:
See Swallow v. State
, 829 S.W.2d 223, 227 (Tex. Crim. App. 1992).

5:
Colburn v. State
, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

6:
Hinojosa v. State
, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999).

7:
See Ladd v. State
, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000).

8:
See Hinojosa
, 4 S.W.3d at 253.

9:
See Waldo
, 746 S.W.2d at 753.

10:
See Colburn
, 966 S.W.2d at 520; 
Turner
,
 Collie & Braden
,
 Inc. v. Brookhollow
, 
Inc.
, 642 S.W.2d 160, 167 (Tex. 1982); 
see also
 
Tex. R. Evid.
 105(a).

11:
See Rakas v. Illinois
, 439 U.S. 128, 133-34, 99 S. Ct. 421, 425-26 (1978);
 Villarreal v. State
, 935 S.W.2d 134, 137 (Tex. Crim. App. 1996).

12:
Terry v. Ohio
, 392 U.S. 1, 88 S. Ct. 1868 (1968).

13:
See Garcia v. State
, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

14:
Bone v. State
, 77 S.W.3d 828, 830 (Tex. Crim. App. 2002).

15:
See Strickland v. Washington
, 466 U.S. 668, 687-90, 694, 104 S. Ct. 2052, 2064-66, 2068 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812-14 (Tex. Crim. App. 1999).

16:
See Bone
, 77 S.W.3d at 830.

17:
See Strickland
, 466 U.S. at 687-90, 694, 104 S. Ct. at 2064-66, 2068; 
Thompson
, 9 S.W.3d at 812-14.

18:
See 
Tex. R. App. P.
 38.1(h); 
Tong v. State,
 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), 
cert. denied,
 532 U.S. 1053 (2001);
 Mosley v. State,
 983 S.W.2d 249, 256 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).